CRAWLEY, Judge.
This is a workmen’s compensation case.[1]
William O’Neal Walls (“worker”) filed a complaint in April 1991, seeking workmen’s compensation benefits by alleging that he had injured his foot in 1989 in the course of his employment with Central LP Gas, Inc. (“company”).
The parties settled with regard to the worker’s claim for compensation benefits. The settlement was approved by the circuit court in April 1991, the circuit court expressly finding that the worker had suffered an injury to his foot. The company paid all medical expenses incurred by the worker for treatment of his injured foot.
In May 1994, the worker filed a motion seeking payment for expenses for surgery and treatment (“medical expenses”) during October and November 1993 relating to the worker’s back. The company filed a response denying liability because, it claimed, the expenses were not related to the foot injury of August 1989. Following ore tenus proceedings, the trial court awarded the worker the amount of the medical expenses incurred in the treatment of his back.
The company presents two issues on appeal: (1) whether the trial judge erred in finding that the worker’s back injury in 1993 was related to the worker’s foot injury in 1989, and (2) whether the 1991 settlement for the foot injury bars the worker’s claim for payment of the medical expenses for the back injury.
The trial court made the following findings of fact, in relevant part:
“On April 25, 1991, this court entered a judgment approving a settlement agreement of a workmen’s compensation claim by the plaintiff for injuñes to his ñght *892 foot. No mention was made of back injuries in the decree.
“On November 4, 1993, the plaintiff had surgery to his back, incurring medical expenses of $16,322.90.
“The decree of April 1991 settled all claims, except for future medical expenses.
“The plaintiff contends this is a related medical expense. The defendant says that it is not related to the foot injury and says the decree of April 1991 is res judicata.
“Dr. Bolton testified for the plaintiff and very strongly says that the back injury was related to the injury to his foot. The plaintiff says that he reported to Dr. Bolton and Dr. Buckner that his back was hurting and that he reported this many times, although it only got in the medical records on one occasion.
“The decree of April 1991 cannot be res judicata because it specifically excepted future medical expenses. The real issue, or question, is whether, or not, this back surgery was related to, or caused by, the injuries that he received in 1989 that were covered by this decree.
“The defendant submits the deposition of Dr. Joel Pickett, a neurosurgeon in Huntsville, Alabama, who performed the back surgery for a herniated disc at L-4/L-5. Dr. Pickett states, in response to a question, that he believes the back injury for which he performed surgery was caused by a ‘new event’ although he did not have any actual injury that he could relate it to, and there was nothing that the patient mentioned that seemed to cause it.
“Dr. Pickett also says that Mr. Walls injured himself in some way back in 1989. He farther says that the plaintiff may have been left with some degree of chronic pain that he found bearable and was able to tolerate and then four weeks before he saw him that he could have had another disc herniation or herniated, additional material out, basically a second insult to the same area, and ‘I think that’s probably what happened.’
“This court finds that the back surgery was caused by and related to the injuries received by Mr. Walls in 1989 for which he was paid the lump-sum workmen’s compensation benefits.
“Judgment is hereby entered in favor of the plaintiff and against the defendant for the sum of $16,322.90, plus cost.”
(Emphasis in original.)
Our review in a workmen’s compensation case is a two-step process. Ex parte Eastwood Foods, Inc., 575 So.2d 91 (Ala.1991). First, we must “look to see if there is any legal evidence to support the trial court’s findings.” Eastwood Foods, 575 So.2d at 93. Second, if such evidence is found, then we must determine “whether any reasonable view of that evidence supports the trial court’s judgment.” Id. Further, “[wjhere one reasonable view of the evidence supports the trial court’s judgment, the judgment must be upheld, even if another, perhaps better reasoned, view of the evidence might have dictated a different outcome.” Ex parte Veazey, 637 So.2d 1348, 1349 (Ala.1993).
The worker presented sufficient legal evidence to support the trial court’s findings. Dr. Joel Pickett, a neurosurgeon, testified by deposition:
“Q It is my understanding in the fall of ’93 you performed a surgical procedure on Mr. Walls; is that correct?
“A That’s correct.
“Q And what was that procedure?
“A I did a hemilaminectomy and micro-discectomy at L4-5 on the right.
“Q And I assume he had a ruptured disc at that level?
“A Herniated disc at L4-5 on the right.
“Q Did you receive a history with regard to that disc from Mr. Walls?
“A Yes.
“Q What history did he give you?
“A He told me that he had had a long history of back and right leg pain dating back to an injury that disabled him in 1989, but over the preceding period of four weeks the pain had become unbearable and had taken on new character and intensity.
“Q Other than what Mr. Walls told you, I take it you had no other source of *893 information regarding his prior physical condition; is that correct?
‘A That is correct.
‘Q Other than the history that he gave you, did you form any opinions as to the cause of his herniated disc or what it herniated?
‘A No, I had nothing else to go on but that.
‘Q Doctor, assume the following facts, if you would, for the sake of my question: Assume that Mr. Walls was in fact involved in an accident that occurred on August the 22nd of 1989; assume further that he reported to his treating physician, Dr. Buckner, in Seottsboro, on October the 3rd of ’89 that he was having pain in his back which Dr. Buckner felt was sciatica; assume further that Dr. Buckner saw him on approximately 22 occasions from October the 3rd of ’89 through March 21 of ’91 and there were no further back complaints; assume further that Mr. Walls was seen by his family physician, Dr. Bolton, of Seottsboro, on approximately 21 occasions from a period of January 30 of ’91 through August 9 of ’93, and during those 21 occasions there was only one complaint of pain in the right leg occurring on August the 7th of ’91, or at least that’s when the visit and the complaint was, and that there were no other back complaints; assume for the sake of my question that that is the medical history that predated the time that you saw Mr. Walls. Based upon those assumed facts and that history, can you say with a reasonable degree of medical certainty whether or not — or do you have an opinion with a reasonable degree of medical certainty as to whether or not the herniated disc that you treated would have been related to an accident occurring on August the 22nd of ’89?
‘A I think, from what Mr. Walls has told me and given the information as well that you’ve just given me, that he may well have had a disc herniation back in the past and it may have caused his leg pain and he may have been left with some degree of chronic radicular pain thát he found bearable and was able to tolerate; and then four weeks before I saw him, he could have had another disc herniation or herniated additional material out, basically a second insult to the same area, and I think that’s probably what happened.”
Dr. Larry T. Bolton testified:
“Q All right. Dr. Bolton, do you have an opinion to a degree of reasonable medical certainty as to the relationship of Mr. Walls’ back condition and his work-related accident of 1989?
“A Yes. I think it was directly related to it. You know, the on-the-job injury predisposed him to having future problems, and this is what happened. I think he had a weakened disc that was ready to go out, and it did go out in ’93, you know, in the fall of ’93.
“Q Now do you have an opinion as to whether this disc was made weak or to be in this weakened condition by the work-related accident of 1989?
“A Yes. It’s directly related.”
The worker testified:
“Q Now, were you taken to a doctor?
“A I was taken directly to the emergency room here in Seottsboro.
“Q And which physician assumed your care at that point?
“A Dr. Buckner.
“Q When you met with Dr. Buckner for the first time, did you discuss with him your problems?
“A Yes, sir.
“Q And did you discuss your foot and your back with him?
“A Yes, sir.
“Q Now, what was the focus of your medical treatment in the early part of the game of your care?
“A Well, it was mainly on my foot and my leg because the foot was crushed, and they had to go in and put plastic in for bones. And I don’t know the numbers and numbers of times, you know, *894 when I would go in I would tell him that I was having back pain and couldn’t hardly get up and go at times, and he kept telling me it was just sciatica problems caused from the nerve that got crushed in my foot. And they never would take an X-ray.”
We find that a reasonable view of the above evidence supports the trial court’s judgment.
The next issue is whether the settlement in 1991 bars this claim for medical expenses. The compromise settlement petition filed in April 1991 does not allege an injury to the worker’s back, but does state the following:
“The plaintiff acknowledges that upon payment of the compromised sum of money set out above, the defendant shall be fully released and discharged from any and all liability, responsibility and accountability under the Alabama Workmen’s Compensation Act for compensation benefits due to the plaintiff. It is agreed that the medicals shall remain open pursuant to the Alabama Code section dealing with medical expenses.”
(Emphasis added.)
The judgment states:
“It is, therefore, ORDERED, ADJUDGED and DECREED that the Settlement Petition and Release be and the same are hereby approved. The plaintiff is awarded the sum of ... which hereby releases the defendant from any and all claims and liabilities for compensation payments for which it might be liable on account of said accident and injury under the said Act pertaining to workmen’s compensation in Alabama. This settlement does not release the defendant from any liability from future reasonable medical expenses which are proven to be directly related to the accident from which this claim arises and which have been duly authorized by the defendant and incurred pursuant to the requirements of § 25-5-77 of the Alabama Code (1975).”
(Emphasis added.)
The Workmen’s Compensation Act, § 25-5-1(1), provides:
“ ‘Compensation’ does not include medical and surgical treatment and attention, medicine, medical and surgical supplies, and crutches and apparatus furnished an employee on account of an injury.”
Because the 1991 judgment released only claims for “compensation benefits,” which phrase does not include medical expenses, and the present claim is for medical expenses, the 1991 judgment does not bar the present claim.
The judgment of the trial court is affirmed.
AEFIRMED.
ROBERTSON, P.J., and THIGPEN, YATES and MONROE, JJ., concur.

. The review of this case is governed by Ala.Code 1975, § 25-5-1 et seq., the Workmen’s Compensation Act, which was in effect before the amendments of May 19, 1992.